19-3123
*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of September, two thousand twenty.

PRESENT:
> DENNIS JACOBS,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> > *Circuit Judges.*

_____

JCorps International, Inc.,

> *Plaintiff-Appellant*,

> v.                                                                  No. 19-3123

Charles and Lynn Schusterman Family
Foundation, Sanford Cardin, Lisa Eisen,
Lynn Schusterman, OneDay Volunteering,
Elad Blumental,

> *Defendants-Appellees*.

_____

| | |
|---|---|
| **For Appellant JCorps International, Inc.:** | ARIEL REINITZ, FisherBroyles, LLP, New York, NY. |
| **For Appellees OneDay Social Volunteering and Elad Blumental:** | BENJAMIN C. FISHMAN, Yankwitt LLP, White Plains, NY. |
| **For Appellees Charles and Lynn Schusterman Family Foundation, Sanford Cardin, Lisa Eisen, and Lynn Schusterman:** | HARRY SANDICK (Erik Haas and George B. Fleming, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY. |

Appeal from the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

JCorps International, Inc. is a non-profit organization based in New York that engages young Jewish adults in various charitable causes.[1] OneDay Social Volunteering is a non-profit based in Israel, which was founded by Elad Blumental, an Israeli citizen and resident. The Charles and Lynn Schusterman

---

[1] JCorps lost its non-profit status around 2013.

Family Foundation (the "Schusterman Foundation") is an Oklahoma-based charitable organization, which allegedly partnered with OneDay to jointly orchestrate various charity events and other activities. Sanford Cardin, Lisa Eisen, and Lynn Schusterman are affiliated with the Schusterman Foundation, and are residents of either Oklahoma or Maryland.

In 2018, JCorps sued in New York federal court alleging that the Defendants had misappropriated JCorps's proprietary information. The district court (Hellerstein, *J.*) dismissed JCorps's first amended complaint for lack of personal jurisdiction. JCorps sought leave to file a proposed second amended complaint, which the district court denied. JCorps has appealed both those decisions.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Standard of Review

We review *de novo* a decision dismissing a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "When responding to a Rule 12(b)(2) motion . . . , the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Id.* (internal quotation marks omitted).

3

"Where, as here, a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Id.* (internal quotation marks omitted). In assessing whether the plaintiff has made that showing, the court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *Id.*

Separately, "[w]e [ordinarily] review a district court's denial of leave to amend for abuse of discretion." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (internal quotation marks omitted). "A district court abuses its discretion when its ruling rests on an error of law or cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted). We review *de novo* a district court's denial of leave to amend on the ground of futility. *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107–08 (2d Cir. 2019).

## II.    Personal Jurisdiction

"[T]o exercise personal jurisdiction over a defendant, a district court must possess a statutory basis for doing so." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013). When determining whether such authority exists, a court typically consults "the law of the state in which [it] is located – here, New

4

York." *Id.* (internal quotation marks and citation omitted). In this case, none of the Defendants are amenable to general jurisdiction in the state. So JCorps has turned to a provision of New York's long-arm statute – C.P.L.R. 302(a)(3)(ii) – as authority for the district court to exercise specific jurisdiction over Defendants. That provision requires a plaintiff seeking to establish jurisdiction to demonstrate that "the tortious act [complained of] caused an injury to a person or property" in the state and that "the defendant expected or should reasonably have expected that his or her action would have consequences in New York." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (citing *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000)).

In addition to identifying such statutory authority, a plaintiff must also demonstrate that the exercise of personal jurisdiction over the defendant would comport with due process.[2] *Id.* A fundamental component of that analysis is to "determine whether [the] defendant has sufficient minimum contacts with the forum." *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).

---

[2] It will often be the case that when the elements of C.P.L.R. 302(a)(3) are satisfied, due process will also be met. *See Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) (explaining that the limitations imposed by C.P.L.R. 302(a)(3) are "more stringent than any constitutional requirement").

"Where the claim arises out of, or relates to, the defendant's contacts with the forum – *i.e.*, specific jurisdiction – minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotation marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014). Moreover, the lawsuit "must arise out of contacts that the defendant *himself* creates with the forum." *Walden*, 571 U.S. at 284 (internal quotation marks omitted). This means that the "analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

Alternatively, JCorps relies of Federal Rule of Civil Procedure 4(k)(2), which provides that where a plaintiff asserts a federal claim, and the defendant is not subject to personal jurisdiction in any state, any federal court may exercise jurisdiction over the defendant for purposes of the federal claim if the defendant has sufficient minimum contacts with the *country* (not the specific state in which the federal court sits). *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008).

## A.    JCorps's First Amended Complaint

The district court was plainly correct to dismiss JCorps's first amended complaint for lack of personal jurisdiction.   The complaint failed to make a prima facie showing either that the court had jurisdiction under New York's long-arm statute or that the Defendants had sufficient minimum contacts with the state (or, in the case of the foreign Defendants, the country) to satisfy due process.

To start, long-arm jurisdiction is lacking because JCorps failed to allege any New York-based harm as a result of the Defendants' conduct.   Under C.P.L.R. 302(a)(3), the site of a commercial injury is not where the economic loss is felt, "but where the critical events associated with the dispute took place." *Benifits by Design Corp. v. Contractor Mgmt. Servs., LLC*, 905 N.Y.S.2d 340, 344 (3d Dep't 2010) (internal quotation marks omitted).   In this context, then, New York-based injury means the loss of New York-based customers or accounts or some other similar harm to in-state business.   *See Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (1978); *see also Troma Ent.*, 729 F.3d at 220.   A contrary rule that looked primarily to the location of the economic loss would mean that a lost sale anywhere in the world could be declared a New York-based harm so long as the injured company resides in that state.   That is insufficient for long-arm purposes.

7

*See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326–27 (1980).

The first amended complaint alleges that JCorps was domiciled in New York, that Defendants intentionally stole JCorps's proprietary information, and that Defendants were aware that this proprietary information had immense value to JCorps. But there are no allegations indicating that JCorps lost New York-based participants or donors, or even that Defendants used this stolen information in New York. So, at most, JCorps's allegations demonstrate some "sort of derivative commercial injury in the state [that] is only the result of [JCorps's] domicile here," *Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir. 1971), which is plainly insufficient to invoke long-arm jurisdiction under New York law, *see Troma Ent.*, 729 F.3d at 218.

Perhaps recognizing this problem, JCorps's founder submitted a declaration to the district court stating, without further elaboration, that Defendants' actions caused JCorps to lose "participants and potential participants in New York," as well as "partnership opportunities[] and fundraising opportunities." App'x at 95. But that conclusory assertion does not fix the problems identified above. *See O'Neill v. Asat Tr. Reg.* (*In re Terrorist Attacks on Sept. 11, 2001*), 714 F.3d 659, 676 (2d Cir. 2013) (holding that "conclusory" allegations are "insufficient for specific

8

personal jurisdiction purposes"). It does not, for instance, indicate *how* the Defendants' actions caused JCorps to lose those New York-based participants, *who* those participants were, *when* the harm occurred, the *significance* of those participants to JCorps's operations, or even *why* this New York-based harm would have been foreseeable to Defendants at all.

For many of the same reasons, JCorps's attempt to hale Defendants into court in New York also fails to meet the minimal contacts required for due process. In particular, there are no allegations in the complaint or in JCorps's founder's declaration that Defendants directly contacted New York-based individuals, solicited donations in New York, or held volunteering events in the state. And while JCorps asserts that Blumental "hack[ed]" into its LinkedIn account, App'x at 27, JCorps alleged no facts showing that Blumental purposefully availed himself of the privileges of conducting computing activities in New York. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (explaining that due process permitted personal jurisdiction in Connecticut because the defendant "knew that the email servers she used and the confidential files she misappropriated were both located in Connecticut" and so could be said to have "purposefully avail[ed] herself of the privilege of conducting computer activities in Connecticut"). So, according to the

first amended complaint, the only connection between Defendants and New York is the fact that JCorps is domiciled there. And the Supreme Court has made abundantly clear that such a connection is insufficient, standing alone, to satisfy due process. *See Walden*, 571 U.S. at 285 (looking to "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there").

Likewise, JCorps cannot rely on Rule 4(k)(2) as a means to assert jurisdiction over OneDay and Blumental – foreign Defendants who may not otherwise be subject to jurisdiction in any particular state.[3] Nearly all the contacts alleged between the foreign Defendants and the United States are the same contacts that were discussed and rejected above. And those allegations are no more successful in demonstrating a relationship between the foreign Defendants and this country generally than they are in demonstrating a relationship between the foreign Defendants and New York in particular.

The only other potentially relevant contact between the foreign Defendants

---

[3] The parties dispute whether JCorps can rely on Rule 4(k)(2) at all given that JCorps has expressly alleged that OneDay and Blumental are subject to specific jurisdiction in New York. We need not resolve this issue because, as we explain, even assuming that JCorps can rely on Rule 4(k)(2), OneDay and Blumental lack the required minimum contacts with the United States to satisfy due process.

10

and the United States is the alleged relationship between the defendant non-profit organizations themselves. But other than to indicate that OneDay partnered with the Oklahoma-based Schusterman Foundation, the complaint fails to tie that partnership to the United States or otherwise explain how OneDay or Blumental availed themselves of the privileges of conducting business in this country. And it is elementary that "an individual's contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

## B.    JCorps's Proposed Second Amended Complaint

Next, JCorps argues that the district court erred by denying JCorps leave to file its proposed second amended complaint. We agree with the district court, however, that JCorps's proposed amendments are futile. Indeed, there are only two material differences between JCorps's proposed second amended complaint and its first amended complaint, neither of which is sufficient to satisfy the relevant long-arm statute or due process.

First, the proposed second amended complaint includes a series of conclusory allegations that Defendants used information stolen from JCorps to "target[]" numerous JCorps participants in New York, which caused those

11

individuals to "curtail[] or stop[] their relationship with . . . JCorps." App'x at 155. But these new allegations are no less conclusory than the claims of loss of participants in the original complaint.

This lack of specificity renders these conclusory allegations futile. *See O'Neill*, 714 F.3d at 676. For instance, both the identity of and importance of the lost New York participants are key components of the C.P.L.R. 302(a)(3) analysis. *See, e.g., Sybron*, 46 N.Y.2d at 205–06 (identifying a specific "major customer" relevant to the parties' dispute and leaving open whether "the loss of [only] a small New York account [could] suffice" to demonstrate New York-based harm); *Cont'l Indus. Grp., Inc. v. Altunkilic*, No. 14-cv-790 (AT), 2016 U.S. Dist. LEXIS 61484, at *7 (S.D.N.Y. Apr. 6, 2016) (collecting cases for the proposition that to satisfy C.P.L.R. 302(a)(3) a plaintiff must "[a]lleg[e] *specific* lost sales or lost customers that are within the New York market" (emphasis added) (internal quotation marks and alterations omitted)); *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 5 N.Y.S.3d 327 (Table), 2014 WL 7201754, at *7 & n.6 (Sup. Ct. N.Y. Cnty. Dec. 15, 2014) (distinguishing *Sybron* because, unlike that case, which concerned the threatened loss of a "major New York customer," the complaint alleged the misuse of a trade secret "to solicit a customer for [only] a single deal in New York"). And yet, such

12

details are entirely absent from the proposed second amended complaint. JCorps has thus failed to make a prima facie case for jurisdiction under the long-arm statute. For the same reasons, JCorps's conclusory allegations fail to demonstrate that Defendants availed themselves of the privileges of conducting business in New York. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018) (concluding that "sparse" and "conclusory" allegations are insufficient "to make a prima facie showing of personal jurisdiction").

Similarly, the proposed second amended complaint's allegations that OneDay used JCorps's proprietary information to forge relationships with several New York-based organizations are not enough to show New York-based harm to JCorps; JCorps does not allege that it had previously partnered with those organizations or that but for OneDay's actions it would have done so. Nor do those allegations demonstrate minimum contacts between OneDay and New York (or the United States). Although those partner organizations were based in New York, JCorps does not allege that OneDay planned any New York-based events with them or otherwise conducted any business in the state other than simply entering into the partnerships themselves. So, for all that is alleged in the proposed amended complaint, the relationships could have been based primarily

13

in Israel, where OneDay is located. These allegations are thus insufficient to permit the exercise of personal jurisdiction over OneDay or any of the other Defendants.[4] *See Burger King*, 471 U.S. at 478; *see also Savin v. Ranier*, 898 F.2d 304, 307 (2d Cir. 1990) (holding that "simply receiving financing" from a forum resident does not "automatically establish sufficient minimum contacts" with that forum (internal quotation marks omitted)).

## III. Conclusion

We have considered JCorps's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment dismissing this case for lack of personal jurisdiction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] The proposed second amended complaint also includes one stray allegation that OneDay "participated in the coordination of several volunteering events in the United States." App'x at 153. But the allegation fails to provide any specifics, such as what those events were, when they were held, or even what OneDay's role was in the coordination of those unnamed events. So we do not credit it. *See Charles Schwab*, 883 F.3d at 86.

14